## COLTS v. DISTRICT OF COLUMBIA.*
### No. 5050.

Court of Appeals of District of Columbia.
Argued Jan. 8, 1930.
Decided Feb. 4, 1930.

H. T. Whelan and W. B. O'Connell, both of Washington, D. C., for plaintiff in error.

W. W. Bride, C. H. Gray, and R. E. Lynch, all of Washington, D. C., for the District of Columbia.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Writ of error to the police court, involving the question whether one charged with reckless driving on a city street is entitled to a jury trial.

In an information, it was charged that Colts, on the 19th of July, 1929, "on O Street, Southeast, and on divers other streets" in the District of Columbia, "did then and there operate a certain motor vehicle at a greater rate of speed than twenty-two miles an hour over said public highway recklessly, that is to say at a greater rate of speed than was reasonable and proper, having regard to the width of said public highway, the use thereof, and the traffic thereon,

*Certiorari granted 50 S. Ct. ——, 74 L. Ed. ——.

in such manner and condition so as to endanger property and individuals, contrary to and in violation of an Act of Congress, the Traffic Regulations in such case made and provided, and constituting a law of the District of Columbia."

He requested a trial by jury, which was denied. A trial before the court resulted in his conviction and sentence to thirty days' imprisonment.

Section 9 of the District of Columbia Traffic Act of March 3, 1925, 43 Stat. 1119, 1123, as amended by section 5 of the Act of July 3, 1926, 44 Stat. 812, 814, under the heading "Speeding and Reckless Driving," provides:

"(a) No vehicle shall be operated upon any public highway in the District at a speed greater than twenty-two miles per hour except in such outlying districts and upon such highways as the director may designate. * * *

"(b) No individual shall operate a motor vehicle over any public highway in the District (1) recklessly; or (2) at a rate of speed greater than is reasonable and proper, having regard to the width of the public highway, the use thereof, and the traffic thereon; or (3) so as to endanger any property or individual; or (4) so as to unnecessarily or unreasonably to damage the public highway.

"(c) Any individual violating any provision of this section where the offense constitutes reckless driving shall, upon conviction for the first offense, be fined not less than $25 nor more than $100 or imprisoned not less than 10 days nor more than 30 days; and upon conviction for the second or any subsequent offense such individual shall be fined not less than $100 nor more than $1,000, and shall be imprisoned not less than 30 days nor more than one year, and the clerk of the court shall certify forthwith such conviction to the director, who shall thereupon revoke the operator's permit of such individual.

"(d) Any individual violating any provision of this section, except where the offense constitutes reckless driving, shall, upon conviction for the first offense, be fined not less than $5 nor more than $25; upon conviction for the second offense, such individual shall be fined not less than $25 nor more than $100; upon conviction for the third offense or any subsequent offense such individual shall be fined not less than $100 nor more than $500, and shall be imprisoned not less than 30 days nor more than one year, and

the clerk of the court shall certify forthwith such conviction to the director, who shall thereupon revoke the operator's permit of such individual."

Section 1 of the Code of Laws for the District of Columbia continues in force here "The common law, all British statutes in force in Maryland on the twenty-seventh day of February, eighteen hundred and one, * * * except in so far as the same are inconsistent with, or are replaced by, some provision of this code."

It is the contention of counsel for the District that the offense charged against Colts "was not the common law offense of reckless driving and that therefore his trial without a jury was authorized under Section 44 of the D. C. Code as amended by Section 4 of the Traffic Act of March 3, 1925, 43 Stat. 1119." That section, as amended, reads as follows:

"That prosecutions in the police court shall be on information by the proper prosecuting officer. In all prosecutions within the jurisdiction of said court in which, according to the Constitution of the United States, the accused would be entitled to a jury trial, the trial shall be by jury, unless the accused shall in open court expressly waive such trial by jury and request to be tried by the judge, in which case the trial shall be by such judge. * * *

"In all cases where the accused would not by force of the Constitution of the United States be entitled to a trial by jury, the trial shall be by the court without a jury, unless in such of said last-named cases wherein the fine or penalty may be more than $300, or imprisonment as punishment for the offense may be more than ninety days, the accused shall demand a trial by jury, in which case the trial shall be by jury. * * *"

It was an indictable offense at common law amounting to a breach of the peace to drive "a carriage through a crowded or populous street, at such a rate or in such a manner as to endanger the safety of the inhabitants." United States v. Hart, 1 Pet. C. C. 390, 392, Fed. Cas. No. 15316; Bowles v. District of Columbia, 22 App. D. C. 321, 323. The opinion in the Hart Case was written by Mr. Justice Washington.

The information in the present case charged Colts with operating a motor vehicle on one of the public streets of the District "recklessly * * * in such manner and condition so as to endanger property and individuals." He was therefore charged with

an offense indictable at common law and amounting to a breach of the peace.

The third article (§ 2) of the Constitution provides that "the trial of all crimes, except in cases of impeachment, shall be by jury." It becomes necessary to determine whether the offense charged in this case is a "crime" within the meaning of the Constitution.

In Callan v. Wilson, 127 U. S. 540, 557, 8 S. Ct. 1301, 1303, 32 L. Ed. 223, the court said: "The third article of the constitution provides for a jury in the trial of 'all crimes, except in cases of impeachment.' The word 'crime,' in its more extended sense, comprehends every violation of public law; in a limited sense, it embraces offenses of a serious or atrocious character. In our opinion, the provision is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by à jury. It is not to be construed as relating only to felonies or offenses punishable by confinement in the penitentiary. It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen." After a review of authorities, the court continues: "Without further reference to the authorities, and conceding that there is a class of petty or minor offenses not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury, and which, if committed in this District, may, under the authority of Congress, be tried by the court and without a jury, we are of opinion that the offense with which the appellant is charged does not belong to that class. A conspiracy such as is charged against him and his co-defendants is by no means a petty or trivial offense. * * * Except in that class or grade of offenses called 'petty offenses,' which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guaranty of an impartial jury to the accused in a criminal prosecution, conducted either in the name or by or under the authority of the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offense charged."

In Schick v. United States, 195 U. S. 65, 24 S. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585, Schick had been proceeded against by information to recover a penalty of $50 for knowingly purchasing or receiving for sale oleomargarine which had not been branded or stamped according to law. The question considered by the court, although not raised by Schick, was whether the waiver of a jury at the trial of the case was in conflict with the laws and Constitution of the United States. The court held that it was not, saying: "It will be noticed that the section characterizes the act prohibited as an offense, and subjects the party to a penalty of $50. So small a penalty for violating a revenue statute indicates only a petty offense. *It is not one necessarily involving any moral delinquency.* [Italics ours.] The violation may have been the result of ignorance or thoughtlessness, and must be classed with such illegal acts as acting as an auctioneer or peddler without a license, or making a deed without affixing the proper stamp. That by other sections of this statute more serious offenses are described, and more grave punishments provided does not lift this one to the dignity of a crime. Not infrequently a single statute in its several sections provides for offenses of different grades, subject to different punishments, and to prosecution in different ways. * * * This very statute furnishes an illustration. By one clause the knowingly selling of adulterated butter in any other than the prescribed form subjects the party convicted thereof to a fine of not more than $1,000 and imprisonment for not more than two years. An officer of customs, violating certain provisions of the act, is declared guilty of a misdemeanor, and subject to a fine of not less than $1,000 nor more than $5,000, and imprisonment for not less than six months nor more than three years. Obviously, these violations of certain provisions of the statute must be classed among serious criminal offenses, and can be prosecuted only by indictment, while the violations of the statute in the cases before us were prosecuted by information. *The truth is, the nature of the offense, and the amount of punishment prescribed, rather than its place in the statutes, determine whether it is to be classed among serious or petty offenses,— whether among crimes or misdemeanors.* [Italics ours.] Clearly, both indicate that this particular violation of the statute is only a petty offense."

It thus appears that in the Callan Case it was ruled that the constitutional provision for trial by jury "is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury"; that there is a class or grade of minor offenses not triable at common law by jury

that may be proceeded against summarily in any tribunal legally constituted for that purpose. In the Schick Case, it was pointed out that a penalty of $50 for violating a revenue statute "indicates only a petty offense," and that "it is not one necessarily involving any moral delinquency." The real test as to the grade of the offense, the court ruled, is "the nature of the offense, and the amount of punishment prescribed."

The offense charged against Colts was not triable summarily at common law, being indictable. Blackstone, 4 Com. 280, 281; State v. Glenn, 54 Md. 572, 600, where it was said that it has been a constant course of legislation in England "for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offences."

That the common-law offense of reckless driving is a crime within the constitutional provision for a trial by jury is, we think, plain. Has the inherent character of that offense been changed by the statutory provision reducing the penalty for a first offense to a fine of not more than $100 or imprisonment of not more than thirty days? We think not. This offense being malum in se necessarily involves moral delinquency. It would be so "adjudged by the sense of a civilized community, whereas an act malum prohibitum is wrong only because made so by statute." State v. Horton, 139 N. C. 588, 592, 51 S. E. 945, 946, 1 L. R. A. (N. S.) 991, 111 Am. St. Rep. 818, 4 Ann. Cas. 797. One convicted of driving a vehicle in a crowded street so recklessly as to endanger human life would merit and receive the lasting condemnation of all right-thinking people, and thus suffer greater punishment than that prescribed by law. If by statute the grade of this serious common-law crime can be changed to a petty offense, then it necessarily follows, we think, that in the same way the grade of the crime of murder, or any other crime, could be changed to a petty misdemeanor. The inevitable result would be the nullification of the constitutional guaranty of trial by jury.

It would be an anomalous situation indeed, if in a civil suit against Colts in the District of Columbia involving more than $20, he could demand a jury trial as of right (Seventh Amendment) and yet could be deprived of that privilege in a prosecution for a common-law offense involving his reputation and liberty.

We repeat, it is the inherent nature or character of the offense, as well as the punishment prescribed, that should determine its class or grade; that is, whether it is a crime in the constitutional sense or a petty offense. The Traffic Act under consideration furnishes an apt illustration. The provision that no vehicle shall be operated at a greater rate of speed than twenty-two miles per hour, except in outlying districts, etc., defines a mere police offense—a creation of the statute. U. S. v. Cella, 37 App. D. C. 433, 435. A violation of that provision would not necessarily involve any moral delinquency. That this was recognized by Congress is apparent from the fact that the penalty for a first offense was fixed at a fine of not less than $5 nor more than $25. Clearly, violation of such a statute must be classed as a petty offense subject to summary prosecution before a court without a jury.

In answer to the suggestion that it would be more convenient to try all cases involving traffic law violations before a court without a jury, we quote the prophetic words of Blackstone when referring to summary proceedings authorized by acts of Parliament, as follows:

"And, however *convenient* these may appear at first (as doubtless all arbitrary powers, well executed, are the most *convenient*) yet let it be again remembered, that delays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution; and that though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concern." Bk. 4, c. 27, 350.

Inasmuch as the punishment in the instant case is not infamous, U. S. v. Moreland, 258 U. S. 433, 42 S. Ct. 368, 66 L. Ed. 700, 24 A. L. R. 992, and a trial by jury may now be had in the police court, 43 Stat. 1119, the judgment will be reversed with costs, and the cause remanded for a new trial.

Reversed.